Filed 1/19/22  P. v. Gaither CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B307936 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA240013-01 |
| v. | |
| JAMAAL GAITHER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Reversed and remanded.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

—————————

Jamaal Gaither appeals from the superior court's order denying his petition under Penal Code section 1170.95[1] to vacate his 2001 conviction for the second degree murder of Africa Sweeney. Gaither contends the trial court used the wrong standard at the hearing in denying his petition based on its conclusion that substantial evidence supported a finding Gaither could be convicted under current law. We join other appellate courts that have held the trial court must act not as a quasi-appellate court but rather as an independent trier of fact, who determines whether the People have proved—beyond a reasonable doubt—the petitioner is guilty under a theory that remains valid after the enactment of Senate Bill No. 1437. Because the record is unclear as to whether the trial court applied a substantial evidence standard or, acting as a finder of fact, applied the beyond a reasonable doubt standard, we reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The shooting at Maverick's Flat*[2]

On July 3, 1999, Maverick's Flat, a nightclub on Crenshaw Boulevard, had been rented for a private party. One of the party's hosts noticed a group of people standing in front of a restaurant next door to the club. Gaither was in the group. (*Gaither I.*)

Another group that included Africa Sweeney went into the club. Yet a third group—friends of one of the hosts—approached the club. Someone in Gaither's group shouted,

---

[1]    References to statutes are to the Penal Code.

[2]    We previously granted Gaither's motion to take judicial notice of the appellate record in his direct appeal, *People v. Gaither* (Feb. 4, 2004, B153450) [nonpub. opn.] (*Gaither I*).

"Shotgun." The Shotgun Crips are a gang. Someone in Gaither's group said, "Do you think the hood is a joke[?]" Someone in Gaither's group threw a beer bottle or can that hit someone in the host's friends' group; Gaither's group then chased that group toward Maverick's Flat and the group ran into the club. (*Gaither I.*)

The host tried to hold the door closed; it had no lock. The host recognized a man named Marvin Pierce in Gaither's group. Another member of Gaither's group lifted his shirt and reached into his waistband for a black gun that looked like a revolver. The host let go of the door and ran into the club. (*Gaither I.*)

Five men entered the club, " 'throwing up their hands' " and talking about " 'this is Shotgun.' " Three of the men were Gaither, Pierce, and a man named Juano Tweedy. A member of the Sweeney group, Larry Lee, saw Gaither and Tweedy reach under their shirts toward their waistbands. Pierce then hit Lee in the jaw. Lee fell to the floor and Gaither, Pierce, and Tweedy began hitting him with chairs. Lee heard gunshots, "which seemed to come from the group of people who were beating him." (*Gaither I.*)

In the meantime, another man, Reginald Mitchell, tried to help Lee. " '[O]ne of the guys raised a gun and told [him] to back up.' " "It appeared that another one of the intruders also had a gun because of the way he was holding his hand down at his side, but [Mitchell] did not actually see a second gun." Sweeney, who was on a balcony, threw a chair at Lee's attackers. A man named Keith Crawford also threw a chair from the balcony at the men attacking Lee. "The next moment, [Mitchell] heard gunshots." (*Gaither I.*)

Lee and Crawford were shot in the leg. Sweeney— hit in the back and shoulder—was killed. Police found three .45-caliber casings and one spent .45-caliber projectile in the club. (*Gaither I.*) The prosecution and defense later stipulated that

3

a qualified firearms expert examined the casings and determined they all were fired by the same gun.

Police found gang materials in Gaither's bedroom, including "a photo collage which appeared to be part of a shrine dedicated to the Shotgun Crips." An officer testified at trial that Gaither, Pierce, and Tweedy all were active members of that gang. When police questioned him, Gaither initially lied. Eventually, he admitted he'd thrown a beer can "at some guys who identified themselves as members of the Rolling 60's Crips gang." He also admitted following the other group into the club and taking a swing at Lee, but said Pierce was the one who knocked Lee down. Gaither said the gunman was Evil, a Santana Block Crip. The next day, Gaither gave police "an entirely different name for the gunman." Police never were able to identify anyone by that name. (*Gaither I*.)

A defense ballistics expert testified at trial that he'd traced the trajectories of two bullet holes found in the club's balcony and determined neither had come from the dance floor. Gaither testified at trial that he'd seen Pierce punch Lee; he heard gunshots "[r]ight after that." Gaither said he lied to the police because they told him they were " 'going to put the murder on [him]' " and he " 'wouldn't see [his] family anymore.' " (*Gaither I*.)

2. ***The charges, trials, verdict, and sentence***

A grand jury indicted Gaither, Pierce, and Tweedy for the murder of Sweeney (count 1), the attempted murder of Crawford (count 2), assault with a firearm on Crawford (count 3), the attempted murder of Lee (count 4), assault with a firearm on Lee (count 5), and "assault with [a] deadly weapon, by means likely to produce great bodily injury" on Lee (count 6). The indictment also alleged gang and firearm enhancements: Counts 1, 2, and 4 alleged a principal discharged a firearm causing great bodily injury or death to the victims; and Counts 3 and 5 alleged Tweedy personally used a firearm and personally

4

inflicted great bodily injury on the victims. Count 7 of the indictment charged Tweedy with possession of a firearm by a felon.

Gaither was tried twice. (Tweedy was tried separately.)[3] The court gave the jury (among other instructions) CALJIC Nos. 8.10 (Murder–Defined), 8.11 ("Malice Aforethought"–Defined), 8.20 (Deliberate and Premeditated Murder), 8.30 (Unpremeditated Murder of the Second Degree), 8.31 (Second Degree Murder–Killing Resulting from Unlawful Act Dangerous to Life), 8.70 (Duty of Jury as to Degree of Murder), 8.71 (Doubt Whether First or Second Degree Murder), and 8.74 (Unanimous Agreement as to Offense). The court also instructed the jury on aiding and abetting, including the natural and probable consequences doctrine, giving CALJIC Nos. 3.00 (Principals–Defined), 3.01 (Aiding and Abetting–Defined), and 3.02 (Principals–Liability for Natural and Probable Consequences). In the instruction on natural and probable consequences, the court told the jury the target crime was assault by means of force likely to produce great bodily injury.[4]

---

[3] According to Gaither's counsel, Tweedy "was acquitted of all shooting-related charges in 2001," and Pierce "accepted a plea to a reduced assault charge and was released from prison years ago."

[4] In addition, the court instructed the jury on conspiracy, giving CALJIC Nos. 6.11 (Conspiracy–Joint Responsibility), 6.10.5 (Conspiracy and Overt Act–Defined–Not Pleaded as a Crime Charged), 6.12 (Conspiracy–Proof of Express Agreement Not Necessary), 6.13 (Association Alone Does Not Prove Membership in Conspiracy), 6.16 (When Conspirators Not Liable for Act or Declaration of Co-Conspirator), 6.17 (Conspirators Not Bound by Act or Declaration of Non-Conspirator), 6.18 (Commission of Act in Furtherance of a Conspiracy Does Not

5

In closing argument in Gaither's first trial, the prosecutor told the jurors, "We may not know whether Jamaal Gaither had a gun when he was reaching in the waistband or not." He said, "Is the evidence clear that Jamaal Gaither fired the fatal rounds? No. Does it have to be? No." The prosecutor explained "the notion of aiding and abetting," using a basketball team as an analogy and asking the jurors, "What is a street gang but a team of criminals?"

The prosecutor continued,

> "People who aid and abet a crime are just as guilty as the people who actually commit it. Anyone who aids and abets, encourages, or promotes the crime knowing that it is something wrong, wanting to help, is on the hook just as much as the trigger man. [¶] The concept, however, goes even further than that. Not only are you guilty of any crime that you help to commit, you are guilty of any crime you should have seen coming. Any crime that's the natural and probable consequence of the crime that you're trying to help, you're on the hook for that too."

---

Itself Prove Membership in Conspiracy), and 6.20 (Withdrawal from Conspiracy). The court told the jury, "A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agree to and did commit, but is also liable for the natural and probable consequences of any crime . . . of a co-conspirator to further the object of the conspiracy, even though that crime was not intended as part of the agreed upon objective and even though he was not present at the time of the commission of that crime."

The prosecutor went on to argue Gaither "charg[ed] into a club," "going after rival gang members," then "punch[ed] somebody in that club." The prosecutor asked, "Should he have known that someone was going to get shot? Should he have known that someone was going to get killed? . . . Of course he should have known. That means he's on the hook for it. Even if he didn't intend for someone to die . . . ." The prosecutor then discussed conspiracy, telling the jurors Gaither was "still on the hook" even if he "really didn't help anybody else commit the crime, but he just sort of charged in there with the other guys."

After discussing the jury instructions on murder, the prosecutor reiterated Gaither was "on the hook for this regardless of whether or not he himself intended to kill if he should have known that it was going to go down that way." The prosecutor never argued Gaither himself was the shooter. Instead, he told the jury, "It doesn't even matter who the shooter was, so long as it was part of [Gaither's] group. He is still on the hook."

In Gaither's second trial, the prosecutor[5] flatly told the jury that Gaither "was not the trigger man." The prosecutor said he would explain "how it was that Jamaal Gaither was guilty of those crimes even though he himself didn't pull that trigger."

Again using the analogy of a basketball team, the prosecutor stated that, under California law, "if you help people commit crimes you're just as guilty as the ones who actually do it." Moreover, the prosecutor said, "You're guilty not only of the crime that you try to help [with] but of any crime that follows that you should have seen coming." The prosecutor told the jury that Gaither had come "charging into a club where he was not welcome" and "participated in the beating of an innocent person

---

[5] The same deputy district attorney tried both trials.

in the company of gang members." So, the prosecutor argued, "It should come as no great shock and no great surprise, especially to Jamaal Gaither, that one of his homeys was going to whip out a gun and start shooting." The prosecutor repeated: "[I]t should come as no great shock that when he and his homeys jump some innocent guy and one of his homeys gets it into his head to start shooting, he's on the [hook] too. As a member of the team." So, the prosecutor concluded, "Even though he's not the shooter, he helped in a very, very dangerous act."

The jury convicted Gaither of Sweeney's murder, assault with a firearm on Crawford and Lee, and assault with a deadly weapon on Lee. The jury acquitted Gaither of attempted murder of Crawford and Lee. The jury was unable to reach a verdict on the gang, and therefore the firearm, allegations. The People chose to retry those allegations and the jury in the retrial found the allegations true. (*Gaither I.*)

The trial court sentenced Gaither to 40 years to life in the state prison on count 1 (15 to life for the murder and 25 to life for the firearm enhancement); seven years on count 3 (the upper term of four years plus three years for the gang enhancement); and two years on count 5 (one-third the midterm of three years plus one year for the gang enhancement). On count 6, the court sentenced Gaither to two years but stayed the sentence under section 654. We affirmed Gaither's conviction. (*Gaither I.*)

3.     ***Gaither's petition, the order to show cause, the hearing, and the trial court's ruling***

After Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect, Gaither filed on February 21, 2019 a petition for resentencing. On a downloadable form, Gaither checked boxes stating he was "convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine," he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal

8

Code §§ 188 and 189," he was "not the actual killer," and he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree."[6]  Gaither also checked the box asking the court to appoint counsel for him.

The court[7] appointed counsel for Gaither.  On August 5, 2019, the prosecution filed a brief contending section 1170.95 was unconstitutional.  On October 15, 2019, Gaither's counsel filed a reply to the prosecution's "constitutional challenge" to the statute.  On January 21, 2020, the court issued an order to show cause, "if any, why the relief requested in the petition should not be granted."

On July 29, 2020, Gaither's counsel filed a brief in support of his petition.  Gaither contended "the prosecution relied exclusively upon the natural and probable consequences doctrine based on aiding and abetting and conspiracy theories with Petitioner Gaither's role in the physical assault on the dance floor as the target offense (for which he was convicted based on his direct role in this offense)."  Gaither asserted "[t]he prosecution

---

[6]     Gaither also checked a box stating, "I was not a major participant in the felony or I did not act with reckless indifference to human life during the course of the crime or felony."  We need not discuss this allegation further, as Gaither was not tried for felony murder, and the "major participant/reckless indifference" issue applies only in felony-murder cases.  (§ 189, subds. (a) & (e).)

[7]     Gaither's petition was assigned to Judge Curtis B. Rappe, the same judge who tried both of his trials in 2000 and 2001.  (See § 1170.95, subd. (b)(1); *People v. Santos* (2020) 53 Cal.App.5th 467, 472-473 [resentencing petition must be assigned to "judge that originally sentenced the petitioner" unless that judge is "not available"].)

9

never alleged or argued that Petitioner Gaither was guilty of murder . . . based on a theory of express or implied malice as either the alleged shooter, an aider and abettor, or a co-conspirator."

Gaither argued Lee, Crawford, and Mitchell never testified they'd seen Gaither with a gun that night. Gaither noted the defense ballistics expert testified "the bullet trajectories showed that the shots were fired from the far side of a partition separating the dance floor" from another area, and " '[n]either one' " came " 'from the dance floor.' "[8]

The prosecution filed a brief disputing Gaither's contention that its sole theory at his trial was natural and probable consequences. The prosecutor noted the jury was instructed on implied malice. The prosecutor went on to offer "another valid analytical approach." That "approach" bordered on the unintelligible. The prosecutor seemed to argue that, even after Senate Bill 1437, a petitioner is ineligible for relief if "a reasonable jury could find that the petitioner's actions in the totality of the circumstances of the [target offense of] assault

---

[8] Gaither's counsel submitted an accompanying affidavit in which he stated he'd represented Tweedy—Gaither's co-defendant—at Tweedy's trial. Counsel stated that, in Tweedy's trial, the prosecution alleged Tweedy fired the shots that killed Sweeney from the dance floor, while standing next to Gaither and Pierce. Counsel also stated he went to the club in 2000, the manager showed him two bullet strikes in the balcony wall, and "[b]ased on the angles of the entries and exits of these bullet strikes, it appeared to [him] that the gunshots did not come from the dance floor as the prosecution claimed, but rather came from the other side of the club away from the dance floor some distance away." The record on appeal contains only the first page of counsel's affidavit.

'were deliberately performed with knowledge of the danger to and with a conscious disregard for human life.'" The prosecutor seemed to contend the natural and probable consequences doctrine remained a valid basis for at least a second degree murder conviction. At the subsequent hearing, the prosecutor told the court, "I think both the implied malice theory and an amended form of the natural and probable consequences doctrine which relies on implied malice are still viable under 1437."

The parties appeared before the court on September 1, 2020 for an evidentiary hearing. (See § 1170.95, subd. (d)(3).) Gaither did not offer any new or additional evidence. The prosecution called an investigator to testify about lyrics he'd found on the internet of two songs by a musician named Jay Capone. The prosecutor told the court one of the songs had been marked as a defense exhibit at trial and Gaither had "indicated that he was involved in the production of it." After hearing from the witness, the court sustained Gaither's objections to the lyrics. The only other evidence the prosecution offered was the Attorney General's file, presumably from Gaither's direct appeal.

After hearing at length from counsel, the court denied Gaither's petition. On the same day, the court issued a detailed written opinion. The court stated it had "instructed the jury on the theories that [Gaither] was (1) a direct perpetrator, (2) a direct aider and abettor, and (3) an aider and abettor and/or a coconspirator under the natural and probable consequences doctrine." The court continued, "The fact that a jury instruction was given on the now defunct natural and probable consequences doctrine of aiding and abetting or conspiracy . . . would not preclude a conviction on a separate but still viable theory of liability for the murder." The court concluded the "People ha[d] proved beyond a reasonable doubt that [Gaither] could be convicted of murder of any degree . . . as a perpetrator and/or as a direct aider and abettor under the current law . . . ."

11

The court quoted at length from our opinion in *Gaither I*. The court then stated, "Substantial evidence supports [Gaither's] conviction of murder as a direct perpetrator under the current law effective January 1, 2019." The court concluded, "Substantial evidence showed that Gaither was armed with a gun and used it to kill the victim," the evidence was "substantial enough to support a willful, deliberate, and premeditated killing" by Gaither, and "[a] jury could reasonably conclude that all three [men], including Gaither[,] were armed, and that [at] least two guns, a revolver, possessed by [Tweedy], and a .45-caliber semiautomatic pistol, possessed by Gaither, were used in the shooting."

The court said "one [c]an be both the actual perpetrator in part and a direct aider an[d] abettor in part." Citing the gang expert testimony at trial, the court stated our Supreme Court has recognized gang rivalry "as strong evidence of motive." The court noted, "Gaither and his group were all Shotgun Crips," concluding, "Gaither and his group went, armed with guns, to a location where gangs congregate and could be provoked, and where a killing would enhance fear of the Shotgun Crips. The manner of killing was a close[-]range shooting during which Gaither fired three shots from his .45-caliber weapon during which two shots killed Afri[c]a Sweeney, a secondary target."

4.    ***The Attorney General's position on appeal***

In response to Gaither's opening brief, the Attorney General filed a respondent's brief citing *People v. Duke* (2020) 55 Cal.App.5th 113 (*Duke*), review granted Jan. 13, 2021, S265309,[9] and arguing "the trial court correctly applied the

---

[9]    On November 23, 2021, the Supreme Court transferred *Duke* back to the court of appeal with directions to vacate its

12

substantial evidence standard in denying appellant's section 1170.95 petition." However, on August 4, 2021, the Attorney General filed a motion for supplemental briefing. We granted the motion. The Attorney General's supplemental respondent's brief states, "Upon further consideration, respondent now finds *Duke* to be less persuasive than other authorities. The trial court thus should have weighed the evidence as an independent trier of fact."

However, the Attorney General argues, "the error was harmless." The Attorney General contends *People v. Watson* (1956) 46 Cal.2d 818, 836 is the test "[w]hen a trial court error constitutes application of the wrong standard or burden of proof at a proceeding created entirely by state law." The Attorney General says, "Whether or not appellant was the actual killer, the court was convinced there was overwhelming evidence of actual malice and premeditation . . . ."

On September 3, 2021, Gaither filed a supplemental reply brief. Gaither cited two cases from this district[10] in which the appellate court remanded the case "where the trial court applied the wrong standard of proof at a section 1170.95, subdivision (d)(3) hearing" "*without* engaging in a prejudice analysis." Gaither argued that—whether judged under *Watson* or *Chapman v. California* (1967) 386 U.S. 18—the error was prejudicial.

_____

decision and reconsider the cause in light of Senate Bill No. 775 (Stats. 2021, ch. 551) (Senate Bill 775). (S265309.)

[10] *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 231, 245, review granted Mar. 10, 2021, S266652 (*Rodriguez*); *People v. Fortman* (2021) 64 Cal.App.5th 217, 221, 226-227, review granted July 21, 2021, S269228. On December 22, 2021, the Supreme Court transferred both of these cases back to the Court of Appeal with directions to vacate the decisions and to reconsider the cases in light of Senate Bill 775. (S266652, S269228.)

13

## DISCUSSION

Senate Bill 1437 took effect January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) It limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).)

Before the passage of Senate Bill 1437, under the natural and probable consequences doctrine a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense) and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.) Senate Bill 1437 amended section 188 to provide that, except for first degree felony murder, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) "The requirement that the principal act with malice eliminates all murder liability under the natural and probable consequences doctrine. (*Gentile, supra*, 10 Cal.5th at p. 839.)" (*People v. Eynon* (2021) 68 Cal.App.5th 967, 974 (*Eynon*).)

"Senate Bill 1437 created section 1170.95 to provide a mechanism for retroactive application of amended sections 188 and 189 to certain defendants convicted of murder under prior law." (*Eynon, supra*, 68 Cal.App.5th at p. 974. See *Lewis, supra*, 11 Cal.5th at pp. 959-960; *Gentile, supra*, 10 Cal.5th at p. 843.) A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he was charged with murder by a charging document that allowed the prosecution to proceed under a

14

natural and probable consequences or felony murder theory; (2) he was convicted of first or second degree murder; and (3) he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 made by Senate Bill 1437. (§ 1170.95, subd. (a).)

Upon the filing of a facially sufficient petition, the trial court must (1) appoint counsel for the petitioner if requested, (2) allow the People to file a response to the petition and the petitioner to file a reply, and (3) determine whether the petitioner has made a prima facie case for eligibility or entitlement to relief. (*Lewis*, *supra*, 11 Cal.5th at pp. 960, 962-965.)  In conducting the prima facie review, the court may consider the record of conviction.  (*Id*. at pp. 970-972.)  "If the petitioner makes a prima facie showing that [he or she] is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).) " 'Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts.' "  (*Eynon*, *supra*, 68 Cal.App.5th at p. 975.)

A petitioner's murder conviction must stand if the prosecution proves, beyond a reasonable doubt, that the conviction is valid under a still-viable theory of liability. (§ 1170.95, subds. (a) & (d)(3).)  "Does this require the prosecution to convince the trial court hearing the petition to conclude that it would convict defendant on a still-viable theory, or merely to convince that court that a reasonable jury *could* convict defendant on a still-viable theory?  The Court of Appeal is split, with a majority following the former rule."  (Compare *People v. Lopez* (2020) 56 Cal.App.5th 936, review granted Feb. 10, 2021, S265974, transferred to the Court of Appeal Dec. 22, 2021 with directions to vacate its decision and reconsider the cause in light of Senate Bill 775; *Rodriguez, supra,* 58 Cal.App.5th 227; *People v. Clements* (2021) 60 Cal.App.5th 597,

15

review granted Apr. 28, 2021, S267624, transferred to the Court of Appeal Dec. 22, 2021 with directions to vacate its decision and reconsider the cause in light of Senate Bill 775, with *Duke*, *supra*, 55 Cal.App.5th 113.)  We join our colleagues who have required an independent finding by the trial court.

As the trial court observed here, with the natural and probable consequences doctrine "now defunct," the question is whether Gaither was the actual shooter or a direct aider and abettor.  If he was, he is not eligible for resentencing. (See *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417 [Senate Bill 1437 amended the Penal Code to ensure murder liability is not imposed on a person who was not the actual killer]; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1157, 1167-1168 [petitioner not entitled to relief where he was convicted as direct aider and abettor].)  But if he was not, and was convicted only under the natural and probable consequences doctrine, he is entitled to relief.

The question of whether Gaither committed murder under a still-valid theory is a factual question, and at a section (d)(3) hearing, the People are required to prove *to the trial court* beyond a reasonable doubt that the petitioner is guilty of murder on a theory of murder valid after Senate Bill 1437's enactment. It is unclear if the court here denied Gaither's petition based on the court's own finding beyond a reasonable doubt that Gaither would be guilty of murder within the meaning of sections 188 and 189, as amended by Senate Bill 1437.

Rejecting Gaither's counsel's argument that the question was what the *jury* had decided, the court noted the prosecution had to prove beyond a reasonable doubt "that he could be convicted under the present law."  However, the court then asked counsel, "[W]here in the statute does it say that I am the trier of fact?"  The court referred to "a jury making that decision," adding, "because of the sufficiency of the evidence."  The court

16

told counsel, "I have to decide could a reasonable jury find that that's the sufficiency of the evidence." And in its written ruling the court referred to "substantial evidence" and what "[a] jury could reasonably conclude."

In light of this ambiguity, we reverse the court's order and remand for a new hearing at which the People may seek to prove to the trial court beyond a reasonable doubt that Gaither was the actual killer or aided and abetted the actual killer with the intent to kill. We decline the Attorney General's invitation to tackle the question of whether any error was harmless. The determination of whether Gaither is eligible or ineligible for resentencing beyond a reasonable doubt is to be decided in the first instance by the superior court—which presided over both of Gaither's trials—acting as fact finder and using the proper standard of proof.

## DISPOSITION

The September 1, 2020 order denying Jamaal Gaither's section 1170.95 petition is reversed and the matter remanded for a new evidentiary hearing under section 1170.95, subdivision (d), applying the correct standard of proof as set forth in this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.